UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KEVIN ZAMBRANO and<br>LONGOBARDO LOZADA,<br><br>               Plaintiffs,<br><br>-against-<br><br>VIVIR SEGUROS, C.A. f/k/a<br>SEGUROS CANARIAS DE VENEZUELA, C.A.<br><br>               Defendant. | **In Admiralty**<br><br>Case No.: _____ |

**VERIFIED COMPLAINT**

Plaintiffs, Kevin Zambrano and Longobardo Lozada ("Plaintiffs"), respectfully file this Verified Complaint against defendant, Vivir Seguros, C.A., formerly known as Seguros Canarias de Venezuela, C.A. ("Vivir Seguros" or "Defendant"), and allege as follows:

**JURISDICTION AND VENUE**

      1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves the breach of a maritime contract for maritime insurance, which contract is described below in detail. This case falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

      2.    At all times material herein, Plaintiffs were and are nationals of, and reside in, the Bolivarian Republic of Venezuela.

      3.    Upon information and belief, at all times material herein, Defendant Vivir Seguros was and is a business entity organized and existing under the laws of the Bolivarian

Republic of Venezuela, with its principal place of business at Edificio Aldemo, Av. Alameda con esquina Av. Venezuela, Urbanización El Rosal, Caracas 1060.

4. The jurisdiction of this Honorable Court is founded on the presence within the District of property of the Defendant, including its bank accounts, which are subject to attachment under the provisions of Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

5. Plaintiffs are the exclusive owners of the motor yacht "FREE WATER" (the "Vessel").[1] Plaintiffs purchased from Defendant a "vessel insurance" policy covering the Vessel, which policy was effective from November 14, 2014 until November 14, 2015 (the "Insurance Policy").[2] The Insurance Policy includes coverage for: (i) hull and machinery damage up to $430,000.00 with a premium of $4,429.00, and (ii) protection and indemnification up to $430,000.00 with a premium of $645.00.

6. On November 24, 2014, Plaintiffs paid the Insurance Policy premiums in full in the amount of $5,074.00, by wire transfer to Defendant's account in the West Miami, Florida branch of Intercontinental Bank, as per Defendant's payment instructions.

7. On the morning of May 22, 2015, the Vessel began taking on water during a coastwise voyage in Venezuelan waters. The Vessel's pumps could not keep up with the flooding, and the passengers and crew were quickly forced to abandon ship. Fortunately, the

---

[1] Brand: Four Winns; Model: V-458; Type:Yacht; Serial GFNC008189; Registration: AGSP-D-5069.

[2] The Insurance Policy is written in Spanish and consist of: (i) Policy No. XX-XX-XX0607; (ii) Annex 1, which includes navigation limits and clauses to apply to the insurance (Institute Yacht Clauses CL 328, CL 370, and CL 380); and (iii) General and Specific Conditions of the Recreational Vessels Insurance Policy (Hull, Torts, and Personal Accidents). A true and accurate copy of the Insurance Policy, as well as a certified English translation of the Insurance Policy, is annexed to this Verified Complaint as **Exhibit 1**.

passengers and crew managed to safely board the Vessel's small, rigid inflatable auxiliary boat (the "Auxiliary Boat"), and they were later rescued by the Venezuelan coast guard. The Vessel, however, could not be saved. It sank to the bottom in Venezuelan waters where it remains today.

8.  Later that same day, May 22, 2015, Plaintiffs, through their insurance broker Bareca Sociedad de Corretaje de Seguros, provided Defendant with notice of the sinking and its claim under the Insurance Policy for the total loss of the Vessel. The estimated value of the Vessel at the time of its sinking was close to $445,000.00, which amount exceeds the $430,000.00 coverage limit of the Insurance Policy. As such, Plaintiffs submitted a claim to Defendant for the total loss of the Vessel in the amount of the Insurance Policy's limit, $430,000.00.

9.  Venezuelan authorities shortly thereafter instructed an investigation board to investigate the sinking of the Vessel. On June 12, 2015, the investigation board issued a report attributing the sinking of the Vessel to flooding, but stating that the cause of the flooding was unknown.

10.  On May 27, 2015, Defendants' appointed claim adjusters, Ajustes UTM C.A., interviewed crew members and requested a number of documents from Plaintiffs, including written fact statements. Defendant and its adjusters made additional requests for information on June 2, 2015, June 28, 2015, and August 18, 2015. Plaintiffs timely and properly responded to each request and have provided Defendant with all of the information requested, even though some of the requests were untimely under the terms of the Insurance Policy.

11.  On November 17, 2015, five (5) months after the incident, Defendant denied Plaintiffs' claim for the total loss of the Vessel. According to Defendant, coverage was denied because of reasons related to the alleged towing of the Auxiliary Boat. Defendant claimed that

the Auxiliary Boat was being towed by the Vessel, thereby breaching a warranty under the Insurance Policy. Defendant also claimed that Plaintiffs had failed to obtain from Venezuelan authorities the proper sailing authorization required for the Auxiliary Boat.

12. On December 16, 2015, Plaintiffs sent to Defendant a letter request for reconsideration explaining that the towing of the Auxiliary Boat did not violate any warranties, and that towing was generally permissible under the terms of the Insurance Policy except in a few specific circumstances that were not applicable in this case. Plaintiffs also enclosed with their request for reconsideration a letter from the relevant Venezuelan authorities explaining that the Auxiliary Boat did not require under Venezuelan law any prior sailing authorization.

13. On February 12, 2016, Defendant confirmed its denial of coverage and rejected Plaintiffs' claim under the Insurance Policy. Despite Plaintiffs' repeated demands, Defendant has not paid the amount it owes to Plaintiffs under the Insurance Policy.

## COUNT I
## BREACH OF THE INSURANCE POLICY

14. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 - 13 hereof with the same force and effect as if fully set forth herein.

15. Defendant Vivir Seguros issued to Plaintiffs the Insurance Policy, which policy was a marine insurance policy covering the Vessel.

16. The Insurance Policy covered damage to the Vessel's hull and machinery, including the total loss of the Vessel, in an amount up to $430,000.00.

17. During the term of the Insurance Policy the Vessel sank and became total loss.

18. Plaintiffs promptly notified Defendant of their loss under the Insurance Policy.

19. Plaintiffs submitted to Defendant a timely claim under the Insurance Policy in the amount of $430,000.00 (the policy limit) for the total loss of the Vessel.

20. Plaintiffs have fulfilled all their obligations under the Insurance Policy for submitting and supporting this claim.

21. Plaintiffs have not breached any of the terms of the Insurance Policy or any of the warranties stated therein, nor have Plaintiffs committed any other act or omission that would entitle Defendant to deny coverage or reject Plaintiffs' claim.

22. Defendant has failed to pay Plaintiffs the amounts owed to them under the Insurance Policy for the total loss of the Vessel.

23. Plaintiffs have been damaged in the principal amount of $430,000.00 as a result of Defendant's breach of the Insurance Policy, plus interest, fees, and costs in the amount of $132,900.00, for a collective claim of $562,900.00.

## REQUEST FOR WRIT OF MARITIME ATTACHMENT

24. The Insurance Policy provides that all disputes between the parties arising out of the Insurance Policy are to be referred to arbitration in Venezuela and decided under Venezuelan law.

25. Under Venezuelan Law, the prevailing party in arbitration is entitled to an award of its attorneys' fees and expenses, and is entitled to 3% interest on its claim.

26. It is estimated that it will take Plaintiff approximately one (1) year to arbitrate this dispute in Venezuela, resulting in the following interest, attorneys' fees, and costs:

| | | |
|---|---|---|
| Interest: | $ 12,900.00 | ($430,000 x 0.03 / year x 1 year) |
| Attorneys' fees and costs | $ 120,000.00 | |
| Total Principal Claim: | $ 430,000.00 | |

   Total Sought:   **$ 562,900.00**

  27.  Defendant is not found within the Southern District of Florida but does have goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the jurisdiction at the specific financial institutions:

        Intercontinental Bank
        5722 S.W. 8th Street
        West Miami, FL 33144

  28.  It is Plaintiffs' understanding that the referenced account, while the property of Defendant, continues to bear Defendants' former name, Seguros Canarias de Venezuela, C.A.[3]

  29.  While all disputes arising out of the Insurance Policy are to be arbitrated in Venezuela, this action is submitted in accordance with Rule B of the Supplemental Rules of Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and should not be considered a waiver of the arbitration clause in the aforementioned Insurance Policy.

  **WHEREFORE**, Plaintiffs pray:

  1.  That a summons with process of attachment and garnishment may issue against Defendant in the name of Vivir Seguros, C.A., as well as in its former name Seguros Canarias de Venezuela, C.A., in the amount of $562,900.00 (including estimated interest, expenses, and attorneys' fees), and if defendant cannot be found, then that goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, accounts, letters of credit,

---

[3] A true and accurate copy of the Shareholders Minutes of Meeting from July 8th, 2013 (in which the shareholders of Seguros Canarias de Venezuela, C.A. approved changing the name of the company to Vivir Seguros, C.A.), as well as its certified English translation, is annexed to this Verified Complaint as **Exhibit 2**.

freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the district may be attached in an amount sufficient to answer Plaintiffs' claim;

2. That Defendant Vivir Seguros and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3. That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claim set forth herein as a Judgment of this Court;

4. That this Court retain jurisdiction over this matter through the entry of any arbitration award or judgment associated with the claim set forth herein, including any appeals thereof; and

5. That this Court grant Plaintiffs such other and further relief which it may deem just and proper.

Dated: June 27, 2016
Miami, Florida

HOLLAND & KNIGHT LLP
Attorneys for Plaintiffs
KEVIN ZAMBRANO
LONGOBARDO LOZADA

By: Brian A. Briz
Florida Bar 0657557
701 Brickell Avenue
Suite 3300
Miami, FL 33131
Tel: (305) 374-8500
Fax: (305) 789-7799
brian.briz@hklaw.com

## VERIFICATION

STATE OF FLORIDA            )
                            )    :ss.:
COUNTY OF MIAMI- DADE )

BRIAN A. BRIZ, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for Kevin Zambrano and Longobardo Lozada, plaintiffs in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Plaintiffs. I am authorized by Plaintiffs to make this verification, and the reason for my making it as opposed to Plaintiffs themselves is that they are not within the jurisdiction of this Honorable Court.

_____
Brian A. Briz

Sworn to before me this
June 24, 2016
     27

_____
Notary Public

#46958920_v1



SHARON K. O'DOWD
MY COMMISSION # EE 178372
EXPIRES: July 12, 2016
Bonded Thru Notary Public Underwriters

9