# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 16-cv-22707-GAYLES

**KEVIN ZAMBRANO** and
**LONGOBARDO LOZADA**,

      Plaintiffs,

vs.

**VIVIR SEGUROS, C.A.** f/k/a/ SEGUROS
CANARIAS DE VENEZUELA, C.A.,

      Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court on Specially Appearing Defendant's Motion for a Rule E(4)(f) Hearing to Vacate Maritime Attachment, and in the Alternative, to Post a Special Bond in Lieu of Attachment Under Rule E(5)(a) ("Motion") [ECF No. 10]. The Court heard argument from the parties on August 5, 2016, and again on August 11, 2016. The Court has reviewed the Motion, Plaintiffs' Response [ECF No. 12], Defendant's Reply [ECF No. 19], the record, and the applicable law. For the reasons that follow, the Court grants Defendant's Motion.

## I.      BACKGROUND

This case involves a dispute regarding insurance coverage of the motor yacht "FREE WATER" (the "Vessel"), which sank to the bottom of Venezuelan waters on May 22, 2015. [ECF No. 1 ¶ 7]. Passengers and crew managed to escape the sinking Vessel by use of an inflatable auxiliary boat. [*Id.*] At the time of the sinking, Plaintiffs Kevin Zambrano and Longobardo Lozada—residents and nationals of Venezuela—were the exclusive owners of the Vessel, for which they had purchased insurance coverage from Defendant Vivir Seguros—a

Venezuelan company—on November 24, 2014, by paying $5,074.00 in insurance premiums by wire transfer to Defendant's account in the West Miami, Florida, branch of Intercontinental Bank. [*Id.* ¶ 6]. The insurance policy was effective from November 14, 2014, to November 14, 2015. [*Id.* ¶ 5]. Plaintiffs filed a claim for the coverage limit of $430,000 on May 22, 2015. [*Id.* ¶ 8]. After five months of investigation, Defendant denied Plaintiffs' claim on November 17, 2015, stating that Plaintiffs had breached a warranty under the insurance policy by towing an auxiliary boat in violation of the policy and in violation of Venezuelan law. [*Id.* ¶¶ 9–11]. Plaintiffs requested reconsideration of the coverage denial by letter on December 16, 2015, explaining that the towing of the auxiliary boat did not violate any policy warranties and that no Venezuelan laws had been violated by use of the auxiliary boat. [*Id.* ¶ 12]. Defendant confirmed its denial of coverage on February 12, 2016. [*Id.* ¶ 13].

Plaintiffs filed the instant action on June 27, 2016, for breach of the insurance policy [*Id.* ¶¶ 14–23] and sought a writ of maritime attachment in the amount of $562,900.00 pursuant to Rule B of the Supplemental Rules of Admiralty and Maritime Claims of the Federal Rules of Civil Procedure [*Id.* ¶¶ 24–29]. On June 28, 2016, Plaintiffs filed an Emergency Motion for Issuance of an Order to Issue Process of Maritime Attachment and Garnishment on an *Ex Parte* Basis [ECF No. 5], which the Court granted on June 30, 2016 [ECF No. 6]. On July 22, 2016, Garnishee Intercontinental Bank held $200,994.69 subject to the Court's Process [ECF No. 9 ¶ 3]. Defendant filed the instant Motion on August 2, 2016, seeking a hearing under Rule E(4)(f) to determine Plaintiffs' entitlement to attach the funds.

## II.   <u>LEGAL STANDARD</u>

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure provides that "[i]f a defendant is not found within the

district . . . , a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process." Fed. R. Civ. P., Adm. Supp. R. B(1)(a). "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which *the plaintiff shall be required to show why the arrest or attachment should not be vacated* or other relief granted." Adm. Supp. R. E(4)(f) (emphasis added). "Whenever process of maritime attachment and garnishment or process in rem is issued[,] the execution of such process *shall* be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court." Adm. Supp. R. E(5)(a) (emphasis added). If the parties are unable to stipulate to the bond amount, "the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs." *Id.*

"Federal admiralty law allows a plaintiff to seize assets and bring suit wherever such assets may be found precisely because, while other assets may be available, plaintiffs may encounter difficulties in tracking them down." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 444 (2d Cir. 2006), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). "The purpose of a Rule B attachment . . . is two-fold: 'first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment.'" *World Wide Supply OU v. Quail Cruises Ship Mgmt.*, 802 F.3d 1255, 1261 (11th Cir. 2015) (quoting *Aqua Stoli*, 460 F.3d at 437–38). The plaintiff has the burden at a Rule E(4)(f) hearing to show the following: "(1) that they have a valid prima facie admiralty claim against the defendant; (2) that the defendant cannot be found within the district; (3) that the defendant's property may be found in the district; and (4) that there is no statutory or

maritime bar to attachment." *Ms Adele Schifffahrtsgesellschaft mbH & Co. KG v. Wonderland Int'l Corp.*, No. 10-20963-CIV, 2010 WL 8932403, at *3 (S.D. Fla. Apr. 12, 2010) (citing *Aqua Stoli*, 460 F.3d at 445). If the plaintiff fails to meet its burden, the district court must vacate the attachment. *See Aqua Stoli*, 460 F.3d at 445. While the plaintiff is not required to prove its case, it must meet a prima facie standard. *See Chiquita Int'l Ltd. v. MV BOSSE*, 518 F. Supp. 2d 589, 592 (S.D.N.Y. 2007).

The district court also has equitable discretion to vacate an attachment. *See McDermott Gulf Operating Co. v. Con-Dive, LLC*, 371 F. App'x 67, 68–70 (11th Cir. 2010) (citing *Aqua Stoli* to affirm the district court's use of "an equitable exception to the general rule upholding maritime attachments"); *see also ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 113 (2d Cir. 2009) ("Even with an attachment secured in conformity with Rule B, equitable vacatur pursuant to Rule E may nonetheless be in order."). While the scope of the district court's equitable vacatur power has not been defined by the Eleventh Circuit, the Second Circuit has held that equitable vacatur is appropriate under any of the following conditions: "1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Aqua Stoli*, 460 F.3d at 445; *see also Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 52 (2d Cir. 2008) (stating that "we have not yet had occasion to determine the full scope of a district court's vacatur power"). "The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge." *Greenwich Marine, Inc. v. S. S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965). The defendant bears the burden to establish any equitable grounds for vacatur. *See Aqua Stoli*, 460 F.3d at 445 n.5.

4

III.    **ANALYSIS**

    A. **Plaintiffs' Prima Facie Admiralty Claim**

Plaintiffs here have the burden to show the following: "(1) that they have a valid prima facie admiralty claim against the defendant; (2) that the defendant cannot be found within the district; (3) that the defendant's property may be found in the district; and (4) that there is no statutory or maritime bar to attachment." *Ms Adele Schifffahrtsgesellschaft*, 2010 WL 8932403, at *3 (citing *Aqua Stoli*, 460 F.3d at 445). The Court finds that Plaintiffs have met their burden.

First, Plaintiffs have shown a valid prima facie admiralty claim for breach of insurance contract against Defendant. A contractual claim gives rise to admiralty jurisdiction under 28 U.S.C. § 1333 when "the principal objective of a contract is maritime commerce." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25 (2004). The court must look to the contract to determine "whether it has reference to maritime service or maritime transactions." *Id.* at 24 (citation and internal quotation marks omitted). "However, because prejudgement attachment is such a severe remedy, it is important to first determine whether a contract is, in fact, a maritime contract warranting maritime attachment." *Williamson*, 542 F.3d at 48. Plaintiffs here allege that Defendant breached their maritime contract for maritime insurance. [ECF No. 1 ¶ 1]. "[I]t is well settled that a suit on a contract of marine insurance falls within our federal admiralty jurisdiction." *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.)*, 896 F.2d 495, 498 (11th Cir. 1990); *see also New Eng. Mut. Marine Ins. Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 35 (1870) (finding that federal jurisdiction exists over policies of marine insurance).

Here, the parties are in agreement that whether Plaintiffs have stated a valid prima facie claim is governed by Venezuelan substantive law. [ECF No. 10 at 7]; [ECF No. 12 at 5]. Defendant argues that Plaintiffs have failed to state a valid prima facie claim because they have

failed to file suit in Venezuela or to indicate definite plans to do so. [ECF No. 10 at 9]. Defendant further argues that no claim in arbitration exists under the contract and that, therefore, exclusive jurisdiction lies with the Venezuelan maritime courts [*Id.* at 10–11]. Finally, Defendant argues that this Court's attachment is void under Venezuelan law and public policy because it was not approved by the Venezuelan insurance regulator and because Plaintiffs failed to submit their petition for attachment within ten days to the Venezuelan maritime court. [*Id.* at 12–15]. The Court is not persuaded by any of these arguments, as they are procedural—not substantive— rules that are not relevant to this Court's determination of a valid contract claim for purposes of a valid Rule B maritime attachment. It is clear from the record that Plaintiffs proposed arbitration to Defendant on June 20, 2016, prior to filing this lawsuit, [ECF No. 12-1 at ¶ 6], and that Plaintiffs have stated a prima facie claim for breach of insurance contract in their Complaint [ECF No. 1]. Defendant's arguments regarding arbitration claims, Venezuelan maritime courts, and Venezuelan insurance regulators are unavailing with respect to this Court's analysis of Rule B.

Second, Defendant Vivir Seguros cannot be found within the district. Third, Defendant's bank account through Intercontinental Bank has been found in the district. Finally, there appears to be no statutory or maritime bar to the attachment in this case. Accordingly, Plaintiffs have met their burden of showing a prima facie admiralty claim. The Court must next turn to Defendant's arguments for vacatur of the attachment.

### B.  Defendant's Equitable Vacatur Claim

Even where the plaintiff has presented a prima facie claim for attachment, the district court has discretion under its equitable powers to vacate the attachment. *See McDermott*, 371 F. App'x at 68–70. The defendant bears the burden to establish any equitable grounds for vacatur.

*See Aqua Stoli*, 460 F.3d at 445 n.5. Equitable vacatur is appropriate in cases where "the plaintiff can obtain in personam jurisdiction over the defendant in the district where the plaintiff is located." *Id.* at 445. Stated another way, vacatur "may be warranted when the defendant can show that it would be subject to *in personam* jurisdiction in *another jurisdiction convenient to the plaintiff*." *Id.* at 444 (emphasis added).

Various district courts have extended this equitable vacatur power to situations where the plaintiff and the defendant are both present in the same foreign jurisdiction and subject to its jurisdiction as well. *See, e.g.*, *H.K. City-Dragon Shipping Co. v. Benxi Iron & Steel (Grp.) Int'l Econ. & Trading Co.*, No. 09-5345, 2009 WL 2526219, at *1 (S.D.N.Y. Aug. 19, 2009) (vacating maritime attachment where both parties were present and subject to jurisdiction in China); *OGI Oceangate Transp. Co. v. RP Logistics PVT. Ltd.*, No. 06-9441, 2007 WL 1834711, at *7 (S.D.N.Y. June 26, 2007) (vacating maritime attachment where both parties were present and subject to jurisdiction in Kolkata, India); *Transfield ER Cape Ltd. v. STX Pan Ocean Co.*, No. 09-1250, 2009 WL 691273, at *4 (S.D.N.Y. Mar. 17, 2009) (vacating maritime attachment where both parties were present and subject to jurisdiction in Seoul, Korea); *cf. McDermott Gulf Operating Co. v. Con-Dive, LLC*, No. 09-0206, 2009 WL 1537871, at *6 (S.D. Ala. May 29, 2009) (vacating maritime attachment where both parties were present and subject to jurisdiction in Mexico), *aff'd*, 371 F. App'x 67 (11th Cir. 2010). *But see ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 969 (9th Cir. 2010) (finding that *Aqua Stoli*'s "limited scenario allows for equitable vacatur only when the plaintiff could obtain *in personam* jurisdiction over the defendant in the federal district where the plaintiff has its most significant presence"); *Flame S.A. v. Indus. Carriers, Inc.*, 24 F. Supp. 3d 493, 511 (E.D. Va.) ("Equitable

vacatur does not permit a Court to vacate an attachment to a foreign jurisdiction."), *aff'd sub nom. Flame S.A. v. Freight Bulk Pte. Ltd.*, 762 F.3d 352 (4th Cir. 2014).

The district court's inherent equitable powers permit it to "adapt an admiralty rule to the equities of particular situation." *See Greenwich Marine*, 339 F.2d at 905. In adapting the admiralty rules to the instant case, the Court first looks to the purpose of maritime attachment. One of the primary reasons for Supplemental Rule B is that "[a] ship may be here today and gone tomorrow, not to return for an indefinite period, perhaps never. Assets of its owner, including debts for freights . . . within the jurisdiction today, may be transferred elsewhere or paid off tomorrow." *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir. 1982). Indeed, "a ship's ability to dock, unload cargo, and fill its hold with goods intended for another destination—all within 24 hours—imposes tremendous pressure on creditors desiring to attach a vessel or property located aboard." *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. De Navegacion*, 732 F.2d 1543, 1547 (11th Cir. 1984), *on reh'g*, 773 F.2d 1528 (11th Cir. 1985). "Federal admiralty law allows a plaintiff to seize assets and bring suit wherever such assets may be found precisely because, while other assets may be available, plaintiffs may encounter difficulties in tracking them down." *Aqua Stoli*, 460 F.3d at 444. "Maritime attachment is a prejudgement mechanism used by parties in admiralty cases to secure jurisdiction over an absent party and to obtain security for potential judgment where the absent party's assets are transitory." *Williamson*, 542 F.3d at 48.

Here, Plaintiffs have not attached a transitory vessel. Instead, they have attached the bank account of Defendant located in this district in an attempt to gain jurisdiction over Defendant and ensure satisfaction of any judgment they may obtain regarding the insurance contract dispute. *See World Wide Supply OU*, 802 F.3d at 1261 (citing *Aqua Stoli*, 460 F.3d at 437–38). While

Plaintiffs have notified Defendant of their intention to submit their claim to arbitration, they have done little else—if anything—to prosecute their case in the Venezuelan court system. This case involves the sinking of a Venezuelan Vessel owned by Venezuelan Plaintiffs insured by a Venezuelan Defendant pursuant to a contract governed by Venezuelan law. While it is true that "American courts have long and consistently held that admiralty jurisdiction was well-founded to enforce the judgments of foreign admiralty courts," *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 534 (4th Cir. 2013), there is no foreign judgment here to be enforced. Rather, the case is in its earliest stages. Plaintiffs and Defendant are all present in the same jurisdiction, and Defendant is subject to *in personam* jurisdiction in the maritime courts of Venezuela. Venezuela is the most convenient jurisdiction for Plaintiffs because all of the events took place in Venezuela and involved Venezuelan actors and witnesses. Balancing these equities, the Court finds that vacatur of the writ is warranted.

## IV.   CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion **[ECF No. 10]** is **GRANTED** as follows:

1. The attachment ordered on June 30, 2016 [ECF No. 6] is **VACATED**.

2. The Complaint is hereby **DISMISSED without prejudice**. Plaintiffs shall proceed with arbitration or file suit on their claims in the Venezuelan Maritime Court within 60 days.

3. Within 10 days, Defendant shall post a special bond sufficient to cover any pending claims by Plaintiffs in Venezuelan Maritime Court.

4.  This action shall be **CLOSED** for administrative purposes, and any pending motions

are **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of September,

2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:    Magistrate Judge Turnoff
       All Counsel of Record